PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES CONROY, ) | |
| ) | CASE NO. 4:15CV01456 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| CORRECTIONS CORPORATION OF ) | |
| AMERICA, *et al.*, ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Defendants. ) | **ORDER** [Resolving ECF No. 29] |

Pending is Defendants' Motion for Summary Judgment, ECF No. 29. The motion is fully briefed, *see* ECF Nos. 33 and 34. The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons set forth below, Defendants' Motion for Summary Judgment is granted.

**I. Factual and Procedural Background**

Defendant Corrections Corporation of America ("CCA") hired Plaintiff James Conroy on August 17, 2009 as the investigator for the Northeast Ohio Correctional Center. Parties' Undisputed Fact Stipulation, ECF No. 37 ¶ 1.[1] The investigator is responsible for informing the warden of inmate complaints against staff. Pugh Dec., ECF No. 29-2 ¶ 9. On September 16, 2013, Plaintiff was injured in an attempt to stop his dogs from fighting. ECF No. 37 ¶ 4. These

---

[1] The parties submitted fact stipulations at ECF No. 28 and ECF No. 37. The documents are substantively identical. The Court relies on the most recent stipulations, ECF No. 37, for purposes of this ruling.

(4:15CV01456)

injuries required him to take time off from work. *Id.* CCA, through Defendant Warden Mike Pugh, permitted Plaintiff to take time off from work to recover and to receive treatment. *Id.* ¶ 5. Following the incident, Plaintiff saw a psychiatrist, who diagnosed him as having post traumatic stress disorder ("PTSD"), dysthymic disorder, and obsessive compulsive disorder. Vinci-Khoury, M.D. Dep., ECF No. 29-3 at PageID #: 1167. By December 2013, Plaintiff had returned to work full-time. ECF No. 37 ¶ 6. CCA gave Plaintiff annual performance reviews. *Id.* ¶ 3. In 2012, 2013, and 2014, Defendant Pugh gave Plaintiff positive performance ratings. *See* Opposition, ECF No. 33 at PageID #: 1616, 1618.

CCA provides employees, including Plaintiff, a Code of Ethics and Business Conduct that includes ethical standards requiring both the diligent performance of duty and mutual respect and cooperation among employees. ECF No. 37 ¶ 7. CCA provides employees, including Plaintiff, with a list of work offenses entitled Standard Schedule of Disciplinary Offenses. The Standard Schedule includes the following offense: "Disrespectful Conduct, use of insulting, abusive or obscene language about others." *Id.* ¶ 8. Plaintiff was aware of the Code of Ethics and the Standard Schedule of Disciplinary Offenses. *Id.* ¶ 9.

On October 9, 2014, Latosia Austin, a CCA unit manager, met with Plaintiff and informed him that an inmate had submitted an informal resolution claiming a CCA Chaplain had sworn at an inmate. ECF No. 37 ¶ 10. During this meeting, Plaintiff used profanity and complained about work being improperly given to the special investigations unit. *Id.* ¶ 11. Specifically, when Austin handed the inmate complaint to Plaintiff, Plaintiff asked, "[W]ho the

2

(4:15CV01456)

fuck told you to give this to me?" Austin Dep., ECF No. 33-8 at PageID #: 1969. When Austin answered, Plaintiff responded, "[W]ho the fuck is he to tell you to give this to me?" *Id.* Austin then told Plaintiff to give the inmate complaint back to her, and she left with it. *Id.* at PageID #: 1970, 1983. Later on the same day, Plaintiff apologized to Austin for using profanity and venting. ECF No. 37 ¶ 11.

After meeting with Austin, Plaintiff was aware that an inmate had submitted an informal resolution containing a complaint about the conduct of CCA staff. *Id.* ¶ 12. Nevertheless, Plaintiff did not follow up to ensure that the complaint was properly and timely reviewed for investigation. *See* Conroy Dep., ECF No. 29-1 at PageID #: 324. Defendant Pugh requested that Plaintiff complete an Internal Investigation Statement regarding the events of October 9, 2014. ECF No. 37 ¶ 13. On October 24, 2014, Defendant Pugh placed Plaintiff on paid leave and recommended the termination of Plaintiff's employment. *Id.* ¶ 14. On November 17, 2014, Defendant Pugh explained his rationale for recommending Conroy's termination in an email to Jeff Rainey and Keith Hall, stating,

> 1. [Plaintiff]'s conduct was extremely unprofessional especially as one representing facility execute staff and the facility investigator.
>
> 2. He failed to do his job. The allegation was not referred to the BOP OIA for investigation. He did not follow-up to ensure a referral was made. That inaction is totally unacceptable.
>
> 3. He was disrespectful. While I do not see it as "blatant", I believe many would disagree on that point. I have terminated numerous staff members for blatant disrespect. Many are probably watching to see if I hold the facility investigator to the same standard.

3

(4:15CV01456)

> 4. He is negative every day about everything, including CCA, and he is outspoken about it.

*Id.* ¶ 15; ECF No. 33-4 at PageID #: 1634.

On November 19, 2014, Rainey concurred with Defendant Pugh's recommendation. *Id.* ¶ 16. CCA terminated Plaintiff's employment on December 1, 2014. *Id.* ¶ 2. The termination letter states that Plaintiff's employment is terminated "due to a violation of Code of Ethics and Business Conduct Facility Employee Supplement 3-3BB #1 Diligence, #3 Cooperation and Mutual Respect; Standard Schedule of Disciplinary Offenses and Penalties 3-3E #7 Disrespectful Conduct, use of insulting, abusive or obscene language to or about others." ECF No. 33-5 at PageID #: 1636. Defendant Pugh documented the reasons for the termination in a Problem Solving Notice. ECF No. 37 ¶ 17. Plaintiff grieved his termination. *Id.* ¶ 18. CCA denied the grievance and upheld the termination of Plaintiff's employment. *Id.* ¶ 19.

Plaintiff filed a two-count Complaint against Defendants in the Court of Common Pleas, Mahoning County, Ohio. *See* ECF No. 1-1. In Counts I and II of the Complaint, respectively, Plaintiff alleges disability discrimination and intentional infliction of emotional distress in connection with his termination. *See Id.* Plaintiff seeks injunctive relief and damages. *Id.* at PageID #: 19-20. Defendants removed the action to this Court on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332. *See* Notice of Removal, ECF No. 1. The Court approved the parties' joint stipulated dismissal with prejudice of Count II, intentional infliction of emotional distress. *See* Notice of Stipulated Dismissal, ECF No. 31. Defendants filed the

4

(4:15CV01456)

motion for summary judgment under review as to the remaining Count I, disability discrimination. *See* ECF No. 29.

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure of materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable factfinder that the non-moving party is entitled to a verdict. *Id.*

(4:15CV01456)

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." Guarino, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment. Klepper v. First Am. Bank, 916 F.2d 337, 342 (6th Cir. 1990).

### III. Analysis

#### A. Disability Discrimination

To establish a *prima facie* case of disability discrimination under Ohio Rev. Code § 4112.02(A), a plaintiff must show that "'(1) the [plaintiff] had a disability; (2) the defendant took an adverse employment action, at least in part, because the plaintiff had the disability; and (3) the [plaintiff], while having a disability, could safely and substantially perform the essential functions of the job in question.'" Emswiler v. CSX Transp., Inc., 691 F.3d 782, 792 (6th Cir. 2012) (citing Wallace v. Mantych Metalworking, 189 Ohio App.3d 25, 937 N.E.2d 177, 183 (2010)). "Once the plaintiff establishes a prima facie case, the burden shifts to the employer to set forth a legitimate, non-discriminatory reason for its action." Covucci v. Service Merchandise Co., Inc., 115 Fed.App'x. 797, 2004 WL 2367970, at *2 (6th Cir. Oct. 20, 2004) (citing Hood v.

(4:15CV01456)

*Diamond Prods., Inc.*, 74 Ohio St.3d 298, 658 N.E.2d 738, 741 (1996)).  If the employer sufficiently sets forth these reasons, "[t]he burden then shifts back to the employee to demonstrate that the employer's stated reason was a pretext designed to mask impermissible discrimination."  *Covucci*, 2004 WL 2367970, at *2 (citing *Hood*, 658 N.E.2d at 741).

In a footnote, Defendants briefly assert that Plaintiff cannot establish the *prima facie* case, arguing only that Plaintiff is not disabled under Ohio law.  *See* ECF No. 29 at PageID #: 168-69, n. 6.  As Defendants state however, the motion for summary judgment "focus[es] on the overwhelming evidence that CCA had a legitimate, non-discriminatory reason to discharge [Plaintiff] and that he was not treated differently than any similarly situated non-disabled employee."  ECF No. 29 at PageID #: 169, n. 6.  Assuming *arguendo* that Plaintiff can establish a *prima facie* case for disability discrimination, the burden shifts to Defendants to demonstrate a legitimate, non-discriminatory reason for discharging Plaintiff.

**B. Legitimate, Non-Discriminatory Reason**

Defendants' burden to set forth a legitimate, non-discriminatory reason for its action is one of production, not of persuasion.  *See Allen v. totes/Isotoner Corp.*, 123 Ohio St.3d 216, 216-17 (2009).  "The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff based upon an impermissible category remains on the plaintiff."  *Id.*  "Legitimate, nondiscriminatory reasons in Ohio law include insubordination."  *Id.* at 217 (citing *Hood*, 74 Ohio St.3d at 302).

7

(4:15CV01456)

Defendants have met their burden by offering that Plaintiff failed to perform his job duties and behaved unprofessionally, in violation of CCA's policies. *See* ECF No. 29 at PageID #: 169-70. Accordingly, any "presumption of discrimination no longer exists," and Plaintiff "must prove that the reasons offered by [Defendants] were in fact pretextual in order to prevail." *Browning v. Dep't of the Army*, 436 F.3d 692, 695 (6th Cir. 2006).

### C. Pretext

A plaintiff can demonstrate pretext by showing "(1) that the [employer's] proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009). "'But a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Williams v. Akron*, 107 Ohio St.3d 203, 206 (2005) (emphasis in original) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993)).

**1. Defendants' stated reasons are based in fact.**

Defendants assert that CCA discharged Plaintiff because he "failed to do his job." ECF No. 29 at PageID #: 169. Plaintiff concedes that he was aware of CCA's requirement that employees diligently perform their duties. *See* ECF No. 37 ¶¶ 7, 9. The evidence of record establishes the following: Plaintiff was the investigator for the prison, ECF No. 37 ¶ 1. As the investigator, Plaintiff was responsible for informing the warden of inmate complaints against staff, Pugh Dec., ECF No. 29-2 ¶ 9. Plaintiff was aware that an inmate had submitted a

8

(4:15CV01456)

complaint against a staff member, ECF No. 37 ¶ 12. Plaintiff failed to report the inmate complaint to the warden and failed to follow up about the complaint[2], Conroy Dep., ECF No. 29-1 at PageID #: 332. There is no question that Plaintiff abdicated his duty.

Defendants also assert that CCA discharged Plaintiff because he behaved unprofessionally. ECF No. 29 at PageID #: 170. Plaintiff concedes that he was aware of CCA's requirement of mutual respect and cooperation among employees, and its prohibition against "disrespectful conduct, [and] use of insulting, abusive or obscene language about others." *See* ECF No. 37 ¶¶ 7-9. Plaintiff also admits that he used profanity in an exchange at work with a fellow employee, *see Id.* ¶ 11, and the evidence of record establishes that he used profanity more than once during this exchange, *see, e.g.*, Problem Solving Notice, ECF No. 28-7 at PageID #: 162; Incident Statement, ECF No. 33-1 at PageID #: 1631. There is no question that Plaintiff violated CCA's policies of mutual respect and cooperation, and its prohibition against using obscene language.

> **2. Defendants' stated reasons actually motivated their action and were sufficient to motivate their action.**

---

[2] In the opposition, Plaintiff states that his co-workers departed from normal procedure by sending him an inmate complaint that was written in Spanish. *See* ECF No. 33 at PageID #: 1619, 1621. He also remarks that the Warden is only the person who assigns investigations to him, and that Austin left with the inmate complaint, even after he attempted twice to get Austin to leave the complaint with him. *Id.* at PageID #: 1621. Because Plaintiff concedes that he failed to follow up on the inmate complaint after he had become aware of it, the Court does not find these explanatory facts of significance. Plaintiff knew of the work and failed to do it.

9

(4:15CV01456)

Plaintiff asserts that he was not fired for being disrespectful because "Austin never felt disrespected by [Plaintiff]" and Defendant Pugh "categorized [Plaintiff]'s behavior as not being 'blatantly disrespectful.'" *See* ECF No. 33 at PageID #: 1626.  The Court's analysis does not turn on these contentions.  Plaintiff's employment was terminated because he violated CCA's well known policies, not because of an employee's perception of his violations.  Plaintiff's claim that "the Warden let his secretary keep a 'swear jar' on her desk," *see* ECF No. 33 at PageID #: 1627, is also of no import.  The existence of a secretary's swear jar neither establishes other instances of employees using obscenities toward other employees without reprimand, nor overrides CCA's policies.

Additionally, Plaintiff contends that he was not fired for lack of diligence or swearing because other CCA employees have engaged in comparable behavior without reprimand.  *See* ECF No. 33 at PageID #: 1626-28.  To demonstrate that an employee is an appropriate comparator, Plaintiff must show that he and his proposed comparator are "similar in all *relevant* respects" and *"*engaged in acts of comparable seriousness." *Ames v. Ohio Dept. of Rehab. & Corr.*, 23 N.E.3d 162, 172 (Ohio Ct. App. Oct. 28, 2014) (citing *Bobo v. United Parcel Svc. Inc.*, 665 F.3d 741, 753 (6th Cir. 2012)*.*  Plaintiff sets forth comparators for the Court's consideration:

> Pugh testified that Austin, herself, violated CCA's Code of Conduct in not reporting [Plaintiff]'s conduct, but Pugh selectively chose not to discipline Austin. . . . [O]ut of at least five employees who knew about the [inmate] complaint, only [Plaintiff] was disciplined.

10

(4:15CV01456)

> Compare [Plaintiff]'s outcome with that of Daugherty. Daugherty sent Austin to Plaintiff with an investigation, when only the Warden was supposed to do so. Daugherty sent Austin back to a Spanish speaking inmate to have that same inmate translate his own complaint from Spanish to English. Daugherty knew about [Plaintiff]'s alleged disrespect and lack of diligence, but failed to report it. Daugherty knew about the [inmate] complaint, but did not follow up on it. For his efforts, Daugherty was promoted into [Plaintiff]'s old position of Investigator.
>
> Moreover, while Daugherty instructed Austin to gather "incident statements" from all persons relevant to the [inmate] complaint, when Austin failed to do so, and instead took only the informal resolution to Plaintiff, neither Daugherty or Austin were disciplined, even though Daugherty's incident statement about the [Plaintiff] matter clearly shows that Austin and Daugherty were both deficient in this regard.
>
> . . . Mike Sullivan, another NOCC employee, admitted to yelling "Shut the fuck up" toward inmates, in an exchange that may have also involved inmates being called "pussies" and "dirty Mexicans." For his conduct, Sullivan was not terminated. Instead, Pugh stayed Sullivan's discipline for one year and then promoted him.

ECF No. 33 at PageID #: 1626-28.

The employees cited by Plaintiff are not valid comparators. At the threshold, none of them was responsible for reporting inmate complaints to the Warden. *See* Pugh Supplemental Dec., ECF No. 34-2 ¶¶ 18-19; Reply, ECF No. 34 at PageID #: 2023-24. That was Plaintiff's responsibility. Pugh Dec., ECF No. 29-2 ¶ 9. Plaintiff's failure to perform his core job function of investigating inmate complaints against staff could have resulted in "(a) serious physical injury to staff and inmates; (b) other misconduct of staff and inmates, such as fights and verbal abuse; and (a) lawsuits, fines and loss of government contracts." Pugh Dec., ECF No. 29-2 at PageID #:

11

(4:15CV01456)

1148.  Plaintiff's opposition does not refute the seriousness of his abdication.[3]  Moreover, Plaintiff overlooks that his employment was terminated based on a *combination* of serious violations of CCA's policies.  His abdication of his core duty *and* his use of profanity (more than once) toward a fellow employee led to his discharge.  Plaintiff has failed to show that the proposed comparators also engaged in more than one egregious violation.

Plaintiff also attempts to establish pretext by pointing to Defendants' acknowledgment of his disability.  *See, e.g.*, ECF No. 33 at PageID #: 1623 (citing to Defendants Pugh's statement that Plaintiff has "serious psychological problems" and is "a very troubled person who lives a painful life"); *Id.* at PageID #: 1622 (citing to Defendant Pugh's statement that Plaintiff "is not well.").  Ohio law prohibits an employer from discriminating against an employee on the basis of his disability.  It does not prohibit an employer from acknowledging an employee's disability—and for good reason.  If mere acknowledgment of disability were prohibited, Plaintiff would not have reaped the benefits of Defendant Pugh's offer of "scheduling flexibility" to "make sure [Plaintiff] got the treatment he needed," for example.  *See Id.* at PageID #: 1617.

Construing the evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, he has failed to prove pretext and not shown that there are triable issues in this case.

---

[3] The employees who were aware of Plaintiff's conduct may have violated CCA's policies by failing to report it, *see Id.* ¶ 20; nonetheless, their error is not of comparable seriousness to engaging in the conduct itself.

12

(4:15CV01456)

### IV.  Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 29, is granted.  The final pretrial and trial are hereby cancelled.

    IT IS SO ORDERED.

| | |
|---|---|
| July 15, 2016 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |